Eastern District of Kentucky
FILED
DEC 18 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 05-116 (WOB)

LIBERTY MUTUAL FIRE INSURANCE CO.     PLAINTIFF

VS.     **MEMORANDUM OPINION AND ORDER**

MICHAEL CRAIG BAKER     DEFENDANT

This matter is before the court on plaintiff's motion for summary judgment (Doc #14) and defendant's cross motion for summary judgment (Doc #17). Having reviewed the record and determined that no hearing on these motions is necessary, the court now issues the following memorandum opinion and order.

### *FACTUAL BACKGROUND*

Plaintiff, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), issued a Homeowner's Policy, Policy No. H32-288-773419-00 (the "Policy") to defendant Michael Baker to cover the residence at 454 Courtney Road in Crittenden, Kenton County, KY ("Residence"). On August 31, 2004, a fire destroyed the Residence and its contents. On September 1, 2004, Mr. Baker notified Liberty Mutual of the fire loss and immediately thereafter pursued a claim for coverage under the Policy. Mr. Baker filed a detailed Property Loss Schedule wherein he sought coverage for the contents of the Residence, which included power tools and related materials for his construction business as well as personal items.

Mr. Baker and his then-wife, Pauletta Wright Baker, lived in the Residence from March 1999 through May 2002, when Ms. Baker moved out. They were divorced on May 27, 2003. The Residence was subject to two mortgages with a combined loan balance as of January 2005 of

approximately $138,000.00. During the Bakers' separation and following their divorce, Mr. Baker lived in the Residence.

The divorce decree was subject to a Separation and Property Settlement Agreement whereby it was agreed that the Residence was to be placed on the market and, upon sale, the net proceeds were to be divided equally, after payment in full of the mortgages. The Bakers also agreed that Ms. Baker was to make the monthly mortgage payments and that Mr. Baker would contribute one-half of the mortgage payments, or $650.00, until the Residence was sold. Upon filing of a Motion[1] to hold Mr. Baker in contempt for failure to pay, on September 29, 2004, the court entered an agreed order whereby Mr. Baker agreed that he was in arrears with his child support payments, Cinergy bill, as well as his obligations pertaining to his one-half of the mortgage payment. Specifically, Mr. Baker agreed that he was delinquent in the amount of $14,750.00. The court entered judgment against Mr. Baker in the amount of $15,745.00.

The fire that destroyed the Residence occurred in the late evening hours of August 31, 2004. At the time of the fire, Mr. Baker was purportedly with his girlfriend Denise Gripshover, who was living at that time with Mr. Baker, at Ms. Gripshover's cousin's house drinking whisky and playing cards. The Residence was empty at least from 10.00-10.30 p.m. until 2.45-3.00 a.m. when Mr. Baker and Ms. Gripshover returned. Upon their return, they found that the fire had been extinguished and several fire trucks were still present at the scene.

As part of the investigation of the fire claim, Liberty Mutual scheduled an Examination Under Oath ("EUO") of Mr. Baker by certified letter dated December 30, 2004. The EUO was scheduled for January 24, 2005. The same letter requested Mr. Baker to provide copies of certain

---

[1] This Motion was filed by Ms. Baker with the Kenton Circuit Court on July 15, 2004.

documents, such as: copies of any mortgages, liens, purchase agreements or other documents relating to the Residence; copies of financial statements and state and federal tax returns for the past five years; all pleadings, documents or agreements relating to the divorce; copies of any loan agreements with any creditor and corresponding statement of accounts; any notices of late payments or past due amounts from any creditor or utility company; statement of account for any creditor or account balance and any correspondence relating to any creditor; all documents constituting or relating to any listing agreements for the sale of the Residence; any correspondence with any real estate agent for the listing or sale of the Residence; and contracts for sale relating to the Residence.

Mr. Baker did not appear for the scheduled EUO, so Plaintiff mailed another certified letter on January 28, 2005 rescheduling the EUO for February 14, 2005. Mr. Baker again failed to appear. By certified letter dated March 17, 2005, Plaintiff rescheduled the EUO for April 14, 2005. Mr. Baker appeared for this EUO, however, he failed to produce any of the documents requested by Plaintiff.

As part of its fire investigation, Liberty Mutual retained the services of Engineering and Fire Investigations Inc. ("EFI") to determine and locate the items contained in the Property Loss Scheduled submitted by Mr. Baker. EFI prepared two reports, one dated October 1, 2004 and one dated May 5, 2005.

Plaintiff filed this action on June 9, 2005, seeking a declaratory judgment that it has no obligation to provide coverage for any damages resulting from the fire at the Baker Residence, asserting, among other arguments, that Mr. Baker made numerous misrepresentations material to Liberty Mutual's investigation and that such misrepresentations void coverage under the policy.

3

## *ANALYSIS*

Under Kentucky law, the rights of parties to an insurance policy are to be determined exclusively by the terms of the policy, unless contrary to existing law or public policy. *Interstate Ins. Group v. Musgrove,* 11 Fed. Appx. 426, 427-28 (6th Cir. 2001). The Supreme Court of Kentucky has held that "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms."*State Farm Mutual Ins. Co. v. Fireman's Fund American Ins. Co.,* 550 S.W.2d 554, 557 (Ky. 1977). As such, the interpretation of an insurance policy is a question of law wherein a court should be mindful that the contract should be liberally construed and all doubts resolved in favor of the insureds, and exceptions and exclusions should be strictly construed to make insurance effective. *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. App. 2005) (citation omitted). A liberal interpretation means that the clear and unambiguous terms in a contract must be construed according to their "plain and ordinary meaning." *Id.* "The terms of an insurance policy are held to be enforceable as written absent a statute to the contrary." *Masler v. State Farm Mutual Auto. Ins. Co.,* 894 S.W.2d 633, 636 (Ky. 1995) (citation omitted).

The Policy at issue in this matter states that it will be void if, before or after a loss, an insured has: (a) intentionally concealed or misrepresented any material fact or circumstance; (b) engaged in fraudulent conduct; or (c) made false statements relating to the insurance.

A misrepresentation is "material" if it "materially affects the insurer's risk or the hazard assumed by the insurer." *Davies v. Centennial Life Ins. Co.* 128 F.3d 934, 943 (6th Cir. 1997) (citation omitted). Such a material misrepresentation may occur by express misrepresentation as

4

well as by omission. *Id.*

To void an insurance policy based on concealment, the concealment must be of a matter material to the risk, and it must not only appear that the insured knew, or that the circumstances were such that an ordinarily prudent person would know, that the fact concealed was material to the risk, but also that it was intentionally and fraudulently concealed. *Continental Ins. Co. v. Ford*, 131 S.W. 189, 190 (Ky. App. 1910) (citation omitted). Fraudulent concealment exists where the insured has knowledge of a fact material to the risk which honesty and fair dealing require that he should communicate to the insurer but, which he intentionally withholds, and this, although no inquiries were made. *Queen Ins. Co. Of America v. Cummins*, 267 S.W. 144, 144 (Ky. App. 1924). *See also Great American Ins. Co. of New York v. Clayton*, 57 S.W.2d 467, 469 (Ky. App. 1932).

In *Home Ins. Co. v. Hardin*, 528 S.W.2d 723, 725 (Ky. App.1975), the court stated the general rule that an intentional misstatement or omission of a material fact will void an insurance policy. *Id.* When dealing with proof of loss in respect to insurance, "the insured must have actually intended to defraud the insurer" for an affirmative defense to defeat the claim. *See Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247, 1256 (6th Cir. 1987) (internal citations omitted).

### 1. Misrepresentations as to the Key Box

As reviewed above, the Policy issued by Plaintiff to Mr. Baker stated, in part that, "[t]he entire policy will be void if, whether before or after a loss, an 'insured' has ... [m]ade false statements [ ] relating to this insurance." The record contains undisputed facts showing that Mr. Baker made several material misrepresentations to Plaintiff in the course of the latter's

5

investigation. While Mr. Baker testified that he thought that someone broke into his house and set it on fire because the real estate agent's key box that hung on the front door was broken open and the key was missing, he never informed the police and fire investigators that he found the key box busted and the key missing. Moreover, EFI's investigation revealed that after Mr. Baker allegedly found the key box broken, it was, in fact, completely intact.

### 2. Property Loss Misrepresentations

Mr. Baker also made misrepresentations regarding several items of property that were purportedly destroyed in the fire. "[C]laiming numerous nonexisting items in a sworn proof of loss is fraud as a matter of law and, in accordance with the terms of the policy, defeats recovery on the entire policy. *Hardin*, 528 S.W.2d at 726. Mr. Baker submitted a Property Loss Schedule with 420 household and personal items listed as part of the claimed loss. While some items were listed more than once and some of the items listed were ineligible, Liberty Mutual's investigation could not locate numerous items claimed to have been damaged. While several items could have been completely destroyed by the fire, other items, such ones made of metal or such ones that could not have been completely destroyed, could not be located.

As to Plaintiff's claim that a 15-horsepower Craftsman lawn tractor, which was listed on the claim but later found in the side yard with no observable damage, Mr. Baker asserts that this lawnmower "was pushed or shoved out of the way of firefighters [sic] they tore the transmission out as it was in gear with no key [sic] that's why it's listed on the EFI report." However, defendant has presented no evidence that the lawnmower was actually damaged by the firefighters or otherwise. As to a swing that was also listed but was found in the back yard with no fire damage, Mr. Baker asserts that the swing "had quarter sized burn holes in the seat and the

6

back and it was ruined." As to the satellite dish that was allegedly lost but found on the side of the house without damage, Mr. Baker admits that the satellite dish was indeed found but states that the "box was destroyed." As to these and several other items specifically identified by the Plaintiff, Mr. Baker fails to substantiate his assertions with any type of evidence.

### 3. Misrepresentations Regarding Mr. Baker's Finances

It is also undisputed that Mr. Baker failed to produce to Liberty Mutual requested documents, including tax returns and other financial information.[2] The Policy provides in Section I, Conditions 2, that the insured must provide Plaintiff with "records and documents [Plaintiff] request[s] and permits [Plaintiff] to make copies." Mr. Baker has unquestionably failed to provide the documentation requested and has given incorrect and evasive responses as to the availability of such documentation.

In his motion for summary judgment, Mr. Baker asserts that his documents were destroyed in the fire and therefore, he could not get any financial advice from Ms. Wood. Nevertheless, in his EUO, Mr. Baker stated that Ms. Wood should be asked for his income tax returns for 2001, 2002 and 2003. *See EUO*, pg. 52-53. Ms. Wood, however, has averred that Mr. Baker told her that he did not file a 2003 tax return and the only income tax return she was to prepare for Mr. Baker was his 2004 return.

### 4. Other Material Misrepresentations

Mr. Baker postponed his EUO scheduled for January 24, 2005 on the ground that he had retained attorney Brian Logan to represent him. However, Plaintiff's investigation revealed that

---

[2] As an excuse, Mr. Baker testified that he retained a financial advisor to handle his taxes and finances. However, it is undisputed that Mr. Baker never in fact provided this advisor, Janet Wood of H&R Block, with the necessary financial documentation.

7

Mr. Logan had not been retained, nor did Mr. Logan have any intention of appearing on Mr. Baker's behalf. In his motion for summary judgment, Mr. Baker concedes that he did not have the required fees to retain Mr. Logan.

Mr. Baker also concedes that he is in debt to his ex-wife, Ms. Baker. However, in a previous interview with plaintiff's investigator, Mr. Baker gave the impression that he only owed his ex-wife "a little more" than $1,200.00. Nevertheless, one month after the fire, Mr. and Ms. Baker executed an agreed order which showed an arrearage in the amount of $15,745.00. Mr. Baker also stated that he was working on home renovations in order to be able to sell the house. Yet, Mr. Baker has presented no evidence that he was indeed working on any improvements or that he ever had a buyer for the house. Mr. Baker asserts that while he does not know the name of the buyer who made an offer for the Residence, his wife would have this information. Yet, in her EUO, Ms. Baker could not give the name of any buyer nor could she confirm or deny whether any improvements to the house had been, indeed, made.

From the evidence presented on the record, it is evident that Mr. Baker failed to provide Liberty Mutual with the required documentation and that he made material misrepresentations in the course of the investigation. Mr. Baker has failed to present any evidence that would raise a genuine issue of material fact as to the misrepresentations made to the Plaintiff. Because Mr. Baker has failed to follow the requirements set forth in the Policy, he forfeited his right to coverage under its clear and unambiguous terms.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that plaintiff's motion for summary judgment (Doc. #14) be, and is hereby, **GRANTED**, and defendant's motion for summary judgment (Doc. #17) be, and is hereby, **DENIED**. A separate judgment shall enter concurrently herewith.

This 18th day of December, 2006.

_William O. Bertelsman_
**WILLIAM O. BERTELSMAN, JUDGE**